THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* ANTONIO HERNÁNDEZ PÉREZ, Defendant and Appellant.

No. CR-66-418.     Decided June 2, 1967.

*Enrique Miranda Merced, Edna Abruña Rodríguez,* and *E. Armstrong de Watlington* for appellant. *J. B. Fernández Badillo, Solicitor General,* and *Héctor R. Orlandi Gómez, Assistant Solicitor General,* for The People.

MR. JUSTICE HERNÁNDEZ MATOS delivered the opinion of the Court.

On September 12, 1963 an information was filed in the Superior Court, Bayamón Part, against appellant Antonio Hernández Pérez, the text of which, insofar as pertinent, is as follows:

"The prosecuting attorney files information against ANTONIO HERNÁNDEZ PÉREZ, who lives at 12 La Pista Street, Cataño, Puerto Rico, for a violation of § 8 of the Weapons Law of P.R. Subsequent, approved January 19, 1951, as amended, 'felony', committed in the following manner:

About August 25, 1963 said defendant ANTONIO HERNÁNDEZ PÉREZ, on La Pista Street, Cataño, Puerto Rico, which is part of the Superior Court of P.R., Bayamón Part, P.R., was illegally, wilfully, and maliciously bearing, carrying, and transporting a loaded pistol, without having a license therefor issued by the Superior Court of P.R., Bayamón Part, which is the part to which defendant's domicile corresponds in this case, nor by the Chief of the Police of P.R., said pistol being a firearm with which serious bodily injury may be inflicted.

The prosecuting attorney also alleges that Antonio Hernández Pérez, prior to the date on which the fact alleged in this information occurred had been found guilty of the violation of § 8 of the Weapons Law of P.R., by final judgment of the Superior Court, Bayamón Part, of February 5, 1957, by which judgment he was ordered to serve from 1 to 2 years in the Penitentiary, in case No. G-56-196, which he served."

On November 21, 1963 he pleaded not guilty, but accepted having been previously convicted of a "violation of § 8 of the Weapons Law . . . by final judgment . . . of February 5, 1957, by which he was ordered to serve from one to two years in the penitentiary, . . . which he served" as it was alleged in the information.

A trial was held before a jury, which found him guilty, and he was ordered to serve 5 to 10 years in the penitentiary.

On appeal he maintains:

"The trial court erred in permitting the prosecuting attorney to examine defendant, in a manner detrimental to him, about his previous conviction for the alleged purpose of impeaching his credibility, and in instructing the jury on the purpose for which it admitted said line of interrogatory."

The evidence for the prosecution consisted of the testimony of the minor José Antonio Cruz Torres and Iris Pris-

cilla Sánchez, who testified having seen defendant fire into the air, and that of policeman Ricardo Robles, who investigated the facts next day.

The defendant-appellant testified in his own defense. He stated, in synthesis, that he was a watchmaker and a radio technician; that he is married, and has three children; that about 8:00 p.m. on August 25, 1963 he was at his home, which is the place where he works; that around the place where he works many detonations are heard; that the Amelia place in Cataño "is a bad place, fights going on all the time"; that on the morning of the 26th of said month of August a policeman went for him, and then about nine or ten a.m. he went before the judge.

After defendant testified the foregoing his direct examination ended as follows:

"Q. Do you have a weapon?
A. No.
Q. Do you use anything similar to a weapon?
A. In my work.
Q. What do you use?
A. An electric pistol to solder with silver, which I do.
Q. What is this I am showing to you here?
A. A pistol.
Q. Have you ever had this, have you ever worked with this, so that any boy may have entered your house and seen it.
A. All day long; whenever I solder a radio I clean it. That red thing it has is a liquid that we smear on the silver.
Q. Is this the only thing you recognize as a weapon that any person may have seen you have?
A. Yes."

It will be noted that defendant was not asked in the direct examination whether he had ever fired a firearm nor did he say it on his own account; nor did he refer to the possession or bearing of weapons on previous occasions or dates.

However, the prosecuting attorney starts her cross-examination as follows: *"Have you said* that you have never fired a weapon?"

Without any basis in the direct examination the prosecuting attorney takes advantage of such a question, unnecessarily, over the objection of the defense, to immediately acquaint the jury, evidently causing prejudice to defendant, with the fact voluntarily admitted by him ten months before when he was arraigned, of having been "accused, convicted, sentenced and served sentence of from one to two years in the penitentiary for a violation of § 8 of the Weapons Law," about seven and a half years before.

The incident occurs as follows:

*"Cross-Examined by the:*

Prosecuting Attorney:

Q. Have you said that you have never fired a weapon?

A. Yes.

Q. Have you ever been convicted, sentenced for the violation of § 8 of the Weapons Law?

Mrs. Treviño: Objection.

Judge: The jury will please withdraw to the jury room. The defense.

Mrs. Treviño: We understand that that is not the way to ask the question to the defendant. I understand that if the prosecuting attorney has any evidence of any fact contained in her question, she should present the evidence.

Prosecuting Attorney: Submitted.

Judge: Is that the objection presented?

Mrs. Treviño: We understand that said question is not proper and that that is not the way to ask it.

Judge: Is the purpose of our colleague to impeach the credibility?

Prosecuting Attorney: Sure, and I am asking him to see whether he denies it, or admits it.

Judge: Section 185 of the Law of Evidence says you are wrong, counsellor. This evidence is dismissed. This evidence has a limited purpose, what is it?, only to impeach the credibility

of the witness. Recall the jury. Do the parties accept that the jury is the same and that it is complete?

Prosecuting Attorney: Yes, sir.

Mrs. Treviño: Yes, sir.

Judge: The prosecuting attorney may go on.

Q. To questions asked by our colleague you have said that you have never had a firearm or fired one?

Mrs. Treviño: Objection.

Judge: Let her finish the question.

Q. I ask you whether on any occasion you were convicted, accused, convicted and sentenced and served sentence of one to two years in the penitentiary for violation of § 8 of the Weapons Law?

Mrs. Treviño: I withdraw the objection.

Judge: Go on. Answer.

A. I have served being innocent. I was sentenced but I was innocent.

Q. Were you sentenced?

A. Innocently.

Judge: Answer the question.

Q. Did you serve from one to two years in the penitentiary?

A. Innocently. I swear in the name of my sacred mother who is dead.

Judge: In relation to this matter the court instructs the gentlemen of the jury that this question is permitted only for the sole purpose of impeaching the credibility of the witness. It cannot be taken into consideration in any other sense. Only for this purpose does § 158 of the Law of Evidence provide that a witness may be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony. Pursuant to said section the only purpose for which said evidence is admitted is to impeach the credibility of the witness, and for no other purpose. It cannot be considered for any other purpose in this proceeding. Go on.

Q. How long were you in the penitentiary on that account?

Mrs. Treviño: Objection.

Judge: Sustained.
Prosecuting Attorney: That is all, with the witness." (Tr. Ev. 74–80.)

The prosecuting attorney does not cross-examine defendant in relation to the particulars covered in his testimony. She centers her cross-examination on one point, for only one purpose. To warn and alert the jury that they have before them a convict, an ex-convict, who was found guilty precisely of another violation of the same § 8 of the Weapons Law. She asks the question related to past occurrences before the jury notwithstanding the objection of the defense and the warnings of the judge who intervened in the case; she repeats them to the jury, then, wrapped in more impressive ingredients and circumstances, which had to produce a greater adverse impact in the respective minds of the jury.

It is true that § 158 of our Law of Evidence permits that a witness be impeached by the party against whom he was called, by contradictory evidence, or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he had been convicted of a felony. It is also true that said section does not make any exception whatsoever in relation to the impeachment of the credibility of a witness in cases of subsequent offenses.

But in these cases, in previously accepting the former conviction of felony, the same should not be brought before the jury, under pretext of impeaching the credibility of the testimony offered by defendant. Only when defendant denies the former conviction, stated in the manner permitted by Rule 48 of the Rules of Criminal Procedure (1963), the jury must determine, pursuant to the second paragraph of Rule 146, whether such charge of previous conviction is true or not. Rule 68 in its second paragraph provides:

"When the information charges a subsequent offense or habitual delinquency the defendant may, at the time of making his plea, or at any subsequent time provided it is prior to the reading of the information to the jury, admit the former conviction or convictions and, in such case, the jury shall not be informed in any manner whatsover of the existence of said conviction or convictions."

See: *People* v. *Colón*, 81 P.R.R. 321, 324–25 (1959); *People* v. *Aponte*, 83 P.R.R. 491, 496 (1961).

Greater care should be exercised in this situation if the evidence for the prosecution has serious flaws or gaps and is susceptible of interpretation in favor of or against defendant. In this case the weapon to which the information refers was not seized; the facts occurred at 8:00 p.m. on the 25th of August; the twelve-year-old minor Cruz Torres, who testified having seen defendant fire into the air, at that time was in the house of a lady called Celia; there are two houses between the house of defendant and that of said lady; sometimes said minor said that defendant had a revolver and later he says that he had a pistol; he said that being dark he saw defendant come out of his home with a pistol; when he was asked whether he could see defendant's house from that of Celia, he answered that he *could not* see it, and he repeated it; (Tr. Ev. 31); he said that next door to him there lived another man who had a revolver, and who was a watchman for the telephone company and that he knew the bullet caps because he had seen them near said watchman's house, whom he had seen fire shots there; that in front of defendant's house there are no light poles; later he denied having said that he saw defendant fire when he came out of his house; he said that the shots went one right after the other. (Tr. Ev. 39.)

Mrs. Sánchez heard, according to her testimony, some shots; at that time she was in bed with her children. Defendant, according to minor Cruz Torres, fired three shots

one after the other and no more; which correspond according to him to the three bullet caps delivered to policeman Robles. Notwithstanding the latter, Mrs. Sánchez testified that after the shots she got up and saw defendant who "was firing in all directions." On cross-examination on how many shots she heard before getting up, she answers, "well, I heard two, and then he fired three shots. *I heard* the three shots." Later, she testified that defendant did not fire any more shots but the first three, that she only heard those. (Tr. Ev. 44.) Although she was in bed, she testified that she saw that, after the first two shots, he ran out of bullets, and she saw defendant reload his firearm in the porch of his house and "start shooting again." And this is the third shot she "heard" while she was in bed with her children. Then she testified something nobody had testified before: that at 5 a.m. next morning defendant fired three more shots. (Tr. Ev. 43.) In relation to these shots she testified that prior to said occurrence she had an argument with defendant's wife and that defendant had "a good one" with her (Tr. Ev. 46), in relation to the water which the witness took freely from defendant's faucet.

■ It is to be presumed that in view of such an unreliable evidence for the prosecution, the revelation to the jury of the previous conviction for the same offense, which was never in controversy, attained in an improper manner notwithstanding the objection of the defense, was a subjective factor which adversely prejudiced appellant in the stage or process of the return of the verdict. The explanation of the trial court could hardly erase from the mind of the jury the psychological impression which must have been caused by said former conviction.

In the light of the concurring circumstances justice demands that a new trial be held against defendant and it will be so ordered.

Mr. Chief Justice Negrón Fernández did not participate herein.